1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8

9   FERDINAND REYNOLDS,                    CASE NO. 1:09-cv-00680-AWI-SAB (PC)

10              Plaintiff,                  **ORDER DENYING PLAINTIFF'S MOTION**
                                           **FOR A HEARING DUE TO DESTRUCTION**
11   v.                                    **OF EVIDENCE AND GRANTING**
                                           **CURATIVE JURY INSTRUCTION**
12   K. GERSTEL,
                                           (ECF Nos. 103, 106, 107, 108, 109)
13              Defendant.
14   _____/

15                                    **I.**

16                          **PROCEDURAL HISTORY**

17          Plaintiff Ferdinand Reynolds is appearing pro se and in forma pauperis in this civil rights

18   action pursuant to 42 U.S.C. § 1983.  Following resolution of the parties cross-motions for summary

19   judgment, this action is proceeding on Plaintiff's claim that Defendant Gerstel was deliberately

20   indifferent to Plaintiff's dental needs in violation of the Eighth Amendment in extracting a tooth on

21   August 18, 2008.  (ECF No. 67.)

22          On April 23, 2012, an order issued vacating the trial in this action, and periodic status

23   conferences have been held in the district court.  On July 25, 2012, Plaintiff filed a motion for a

24   hearing due to willful and intentional destruction of his evidence.  (ECF No. 103.)  On July 30, 2012,

25   a telephonic hearing was conducted by the district court judge; and this action was referred to the

26   magistrate judge for determination if any action needed to be taken due to Plaintiff's allegations

27   regarding his missing property and evidence.  (ECF No. 104.)  Defendant filed an opposition to

28   Plaintiff's motion on August 22, 2012.  (ECF No. 106.)  Plaintiff filed a reply on September 12,

2012, and a supplement to his reply on September 24, 2012.  (ECF Nos. 107, 108.)  On December 17, 2012, Plaintiff filed a declaration.  (ECF No. 109.)

## II.

## MOTION FOR HEARING ON DESTRUCTION OF PROPERTY

Plaintiff brings this motion alleging that prison officials willfully and intentionally destroyed evidence that he needs to prove his claims in this action and requests an evidentiary hearing. Plaintiff's claims regarding the destruction of his personal property are unrelated to the issues in this action.  This matter has been referred to this court for the limited determination on Plaintiff's claim that evidence and legal documents in this action have been destroyed.  Therefore, Plaintiff's allegations regarding retaliation and destruction of his personal property shall be disregarded.  The Court has reviewed Plaintiff's moving papers, Defendant's opposition and Plaintiff's reply and finds that a hearing is not necessary.  Accordingly, Plaintiff's request for a hearing is denied.

### A.     Plaintiff's Position

While housed at Salinas Valley State Prison ("SVSP"), Plaintiff was scheduled to be transferred to another institution.  On May 4, 2012, Correctional Officer Cox told Plaintiff that he had no right to be present while his personal property was packed and allegedly threatened to harm the property if Plaintiff refused to allow Officer Cox to pack it.  Plaintiff contacted the law office of defense counsel regarding the issue.  (Mot. Requesting Fact Finding Hearing 1, ECF No. 103.)  Later that same day, Plaintiff was informed that he would be allowed to be present to observe his property being inventoried and packed due to his transfer from SVSP.  Receiving and Release ("R&R") was notified that Plaintiff's personal property was to be packed and inventoried by floor staff due to the threat made by Officer Cox.  (Id. at 2.)

Plaintiff was allowed to observe his personal property being inventoried and packed prior to his transfer.  (Id.)  Plaintiff's property was packed in eleven boxes and his legal property was labeled "do not open."  (Id. at 3-4.)  The next morning, Plaintiff was escorted to be picked up by the transportation bus.  Plaintiff states that prior to the arrival of the bus, Officer Cox noticed that Plaintiff's property had been packed by facility staff and became angry, telling Plaintiff his property was going to end up in the trash.  Officer Cox allegedly went to Sgt. Jansen and insisted that Sgt.

2

1  Jansen help Officer Cox with his plan of destroying Plaintiff's property. (Id. at 4.) Sgt. Jansen then

2  came from his office to the shipping dock and began ripping apart the boxes and throwing Plaintiff's

3  personal property and legal property on the ground.

4       Plaintiff claims that Sgt. Jansen came over to the holding cell while holding Plaintiff's two

5  envelopes containing his legal materials, including evidence in this action. Plaintiff and Sgt. Jansen

6  got into a verbal dispute regarding defense counsel interfering with the way Plaintiff's property was

7  handled during the transfer. (Id. at 5.) When Plaintiff asked Sgt. Jansen what exactly was meant by

8  his statements, Sgt. Jansen allegedly told Plaintiff he would see.

9       Sgt. Jansen and Officer Cox then took Plaintiff's property and packed it into eighteen

10 separate boxes. (Id. at 6.) Plaintiff's boxes were loaded onto the bus and he and his property were

11 transported to Corcoran State Prison where he spent one night. The following morning, Plaintiff was

12 transported to LSP. (Id. at 7.) On June 13, 2012, Plaintiff was allowed to review the property that

13 was transported to LSP and discovered that some of his property was missing. The property relevant

14 to this motion includes the half drilled tooth filling and his jury trial statement that had been prepared

15 in anticipation of this trial. (Id. at 8.)

16      Plaintiff contends that with his filling he intended to prove that 1) Defendant Gerstel did not

17 follow mandatory CDCR Dental policies by failing to perform dental x-rays on August 18, 2008; 2)

18 the failure to extract the tooth was willful, intentional, and deliberate, and Defendant Gerstel left half

19 of the tooth deep in Plaintiff's jawbone without bothering to take x-rays causing Plaintiff to have to

20 remove the tooth himself; 3) Defendant Gerstel lied to the supervising chief dentist by assuring him

21 that he had followed CDCR policies and procedures by taking x-rays of Plaintiff's tooth on August

22 18, 2008; 4) Defendant Gerstel committed perjury when he stated in a sworn declaration that he did

23 not take an x-ray of Plaintiff's tooth on August 18, 2008; and 5) x-rays taken after September 25,

24 2008, are totally irrelevant because the injury to Plaintiff had already occurred by showing the drill

25 mark on the half filled tooth. (Id. at 10-12.)

26      Plaintiff alleges that defense counsel examined the half drilled tooth filling and agreed to

27 have it submitted as a joint exhibit at trial and then changed her mind the next day. (Id. at 12.)

28 Plaintiff claims that this proves that the half drilled tooth existed and was in his possession. (Id. at

1    13.)  Plaintiff seeks default judgment for the destruction of his evidence.

2        **B.    Defendant's Position**

3        Plaintiff opposes this motion on the grounds that the Court does not have jurisdiction to

4    conduct a fact finding hearing on Plaintiff's claims against non-parties to this action; and there is no

5    evidence that any of Plaintiff's legal property was destroyed or thrown away.  (Def. Gerstel's Opp.

6    to Pl.'s Mot. Requesting a Fact Finding Hearing 1, ECF No. 106.)

7        Upon an inmate's transfer between institutions, the sending institution is required to

8    inventory the inmates property and document on CDC form 1083 all personal property and the

9    disposition of any property not allowed at the receiving institution.  Both the individual who

10   inventories the property and the inmate sign the form to document that all property is accounted for.

11   The officers in R&R have this responsibility; and Sgt. Jansen supervises the R&R officers to ensure

12   that the procedures are followed and the inmate's property is properly inventoried and secured.  (Id.

13   at 2.)

14       Pursuant to CDCR guidelines, all containers used to transport inmate property may not

15   exceed minium dimensions, nor may they be in excess of thirty pounds each.  Further, all containers

16   to be transported must be x-rayed to ensure that no contraband materials are included.  Anything

17   which is not permitted, which is in excess of the maximum quantity permitted, or is obtained from

18   an unauthorized source is considered to be contraband.  (Id.)  Unauthorized items are to be disposed

19   of by mailing the item to an address provided by the inmate, donating it, or destroying it.  (Id. at 2-3.)

20       When Plaintiff's personal property boxes were brought to R&R on May 10, 2012, the boxes

21   were in excess of thirty pounds, in violation of the regulations, and none of the property had been

22   x-rayed.  Sgt. Reynolds contends that when he informed Plaintiff that his property was going to be

23   x-rayed for contraband and placed into boxes that complied with the weight limit, Plaintiff informed

24   the nurse that he needed to be seen by the psychiatrist due to mental health concerns.  Plaintiff was

25   taken by Correctional Officer Lopez and Sgt.  Jansen to the Correctional Treatment Center for a

26   mental health examination.  (Id. at 3.)

27       Sgt. Jansen returned to R&R and Plaintiff's legal and personal property was x-rayed and it

28   was discovered that Plaintiff had 99 compact discs, 3 watches, and 27 cassette tapes inappropriately

4

concealed within his legal property. A folder of Plaintiff's material was also confiscated because it contained information that could jeopardize the safety and security of the institution if in the hands of an inmate. (Id.) Sgt. Jansen later discovered that Plaintiff was allowed to be in possession of the materials determined to be a safety risk as they were part of an on-going legal case. (Id. at 3-4.)

Plaintiff's property was x-rayed and re-boxed to comply with the thirty pound weight limit. No metal was seen while the boxes were re-packed or x-rayed. Plaintiff refused to choose an option on how the 99 compact discs were to be disposed of so they were packed and sent with Plaintiff to LSP. (Id. at 4.) When Plaintiff was received at LSP, he was not allowed to have his personal or legal property in his cell, so all his legal materials were stored in R&R. When Plaintiff was allowed access to his property he did not indicate that his legal property was missing. (Id at 5.)

Defendant argues that Plaintiff does not have standing, nor does the court have jurisdiction, for the court to conduct a fact finding hearing in this matter. (Id. at 5-6.) Further, there is simply no evidence that anyone destroyed or tampered with any of Plaintiff's property. Defendant argues that it is suspicious that Plaintiff has continually made accusations about missing evidence, and Plaintiff appears to have pre-designed this motion when he filed his motion to have the tooth placed in evidence a year ago. Plaintiff has made contradictory statements regarding the tooth. In his declaration for the prior motion, Plaintiff stated that he watched staff throw away the remaining portion of his tooth on July 1, 2011. However, in his deposition testimony, Plaintiff claimed that he flushed the remaining portion of the tooth down the toilet in his cell. (Id. at 6.)

### C.   Plaintiff's Reply

In relevant part, Plaintiff replies that not all of the self extracted tooth fell into the toilet and he had a small part of the tooth. (Pl.'s Response to Def.'s Mot. to Oppose a Fact Finding Hearing 2, ECF No. 107.) Sgt. Jansen would not know to look for Plaintiff's tooth while he was x-raying the boxes that were to be transported with Plaintiff. (Id. at 3.)

Plaintiff submits a declaration signed August 9, 2011, in which he claims that there was a small manila envelope that contained a clear plastic bag with half of his tooth that was evidence in this action. Plaintiff states that he watched Correctional Officer Gudino exit his cell with the bag and throw the envelope into the trash. Plaintiff states this caused him to become suicidal and he was

Case 1:09-cv-00680-AWI-SAB   Document 112   Filed 02/12/13   Page 6 of 11

placed on suicide watch. (Dec. Of Ferdinand Reynolds 13, ECF No. 107.) In the declaration, Plaintiff states he was left with only the filling which he kept in a different location from the tooth itself. (Id. at 14.)

In his supplemental reply, Plaintiff alleges that Sgt. Jensen filed a false declaration. While Plaintiff is again alleging that prison officials are lying, the regulation cited by Plaintiff supports Defendant's position that containers cannot weigh over thirty pounds. *See* Cal. Code Regs., tit. 15 § 54030.7.1. Further, while Plaintiff complains that the declaration did not admit that the inmate is allowed to be present during the search of his property, this is not at issue in this action.

Plaintiff subsequently submitted a declaration from Correctional Officer Guglielmo regarding an incident that occurred on the date he arrived at LSP. The Court does not find that the declaration submitted by Plaintiff is sufficient to find that Officer Reitz filed a false declaration in this action. However, the Court will consider the differing statements to the extent that they would resolve the issue before the Court.

### D.    Evidence at Issue

Initially, Plaintiff is alleging that a document containing his trial strategy was lost. While this document may pertain to the trial in this action, it is not evidence and Plaintiff has had ample opportunity to reproduce this document. The Court finds that any prejudice to Plaintiff from the loss of this document is adequately addressed by the passage of time allowing him to recreate the document.

Plaintiff's motion is ambiguous as to exactly what the evidence is that he is currently claiming was lost during the transport to LSP. Plaintiff refers to the item as his "half drilled tooth #29 metal filling." In Plaintiff's deposition taken on November 19, 2010, Plaintiff stated that he had the filling.

> I have the filling that was part of it, but not the broken tooth itself. I was bending over the toilet while I was digging and I have part of the filling but the partial tooth went into the toilet and I wasn't going to dig in the toilet to find it. But I did save the half drilled filling . . . .

(Corrected Depo. of Ferdinand Reynolds 11, ECF No. 106-2.) In the declaration dated August 9, 2011, Plaintiff states that Mr. Gudino "and Mr. Diaz had actually thrown away [his] envelope

1  without ever disputing nor denying that [his] legal envelope contained [his] broken portion of [his]

2  self extracted tooth #29 enclosed inside of it. [Plaintiff] is now left with only the smaller portion

3  metal filling from his self extracted tooth #29. . . ." (Decl. of Ferdinand Reynolds 13, ECF No. 107.)

4  Based upon the documents submitted by Plaintiff, the Court finds that the evidence at issue in this

5  instance is some portion of a filling from a tooth.

6      Although Defendant argues that there is no evidence that anyone tampered with or damaged

7  Plaintiff's property, Defendant does not contend that the filling did not exist. Further, Plaintiff states

8  that defense counsel saw the filling and agreed to enter it as a joint exhibit, but subsequently changed

9  her mind. Defense counsel has not submitted any evidence to contradict Plaintiff's declaration, and

10  the Court finds that the filling was in Plaintiff's possession during the litigation of this action.

11      **E.    Jurisdiction to Conduct Evidentiary Hearing**

12      Defendant is incorrect in arguing that this court does not have the jurisdiction to conduct an

13  evidentiary hearing regarding the issue of Plaintiff's lost filling. Although the Court finds that this

14  motion is able to be decided on the moving papers, the Court has the jurisdiction to resolve

15  evidentiary issues in this action and it is within this court's power to issue subpoenas, even to non-

16  parties, and hold a hearing to determine issues directly related to the issues of this case. Med. Lab.

17  Mgmt. Consultants v. American Broad., 306 F.3d 806, 824 (9th Cir. 2002) (federal court has

18  inherent discretionary power to determine evidentiary issues in response to the destruction of

19  relevant evidence in the action).

20      **III.**

21      **DEFAULT JUDGMENT**

22      **A.    Legal Standard**

23      Plaintiff is seeking default judgment based upon the loss of his filling. Prior to ordering

24  default judgment as a sanction against a party the court must consider: "(1) the existence of

25  extraordinary circumstances and the presence of wilfulness, bad faith, or fault by the offending party;

26  (2) the efficacy of lesser sanctions; and (3) the relationship or nexus between the misconduct and the

27  matters in controversy." Estrada v. Speno & Cohen, 244 F.3d 1050, 1055-56 (9th Cir. 2001).

28  Additionally, the court may consider the prejudice to the party that is a victim of the misconduct and

1    the government interests at stake.  Estrada, 244 F.3d at 1056.

2        **B.    Discussion**

3            1.    Extraordinary Circumstances and Bad Faith

4        The loss of the filling which Plaintiff planned to use as evidence in this action occurred

5    during his transfer from SVSP to LSP.  Plaintiff alleges that R&R staff at SVSP lost his filling in

6    retaliation for Plaintiff objecting to the way his personal property would be handled during his

7    transfer to another institution.

8        The incidents that allegedly caused the loss of Plaintiff's filling occurred at a different

9    institution and over four years after the incident at issue in this action.  After Plaintiff became

10   concerned that Officer Cox was going to harm his property, he contacted defense counsel who

11   arranged with the prison litigation coordinator for Plaintiff's possessions to be packed in his

12   presence.  When Plaintiff contacted his prison counselor on May 9, 2012, regarding the issue of how

13   his property was to be packed, defense counsel was again contacted.  Defense counsel "specifically

14   instructed" the counselor to "make absolutely sure that all of [Plaintiff's] pending court documents

15   . . . are securely safeguarded when being packed by staff, and that all of [Plaintiff's] personal

16   property be placed onto the transportation bus with [Plaintiff] without being left behind for any

17   reasons!" (ECF No. 103 at 3.)  During the phone conversation arrangements were made for custody

18   staff to pack and inventory all of Plaintiff's belongings; and this did occur.  The facts as set forth by

19   Plaintiff do not impute any wrongdoing to Defendant Gerstel.

20       Further, although Plaintiff alleges that Sgt. Jansen and Correctional Officer Cox conspired

21   to destroy the evidence, there is no evidence before the Court that Sgt. Jansen or Correctional Officer

22   Cox improperly disposed of Plaintiff's evidence.  Plaintiff's belongings were packed into different

23   boxes because the original boxes exceeded the weight limit of thirty pounds.  Plaintiff's allegation

24   that Sgt. Jansen had his envelopes, and told Plaintiff that he would see what Sgt. Jansen meant by

25   statements he made about the attorney not being able to tell him how to do his job are not sufficient

26   to show that Sgt. Jansen destroyed the evidence.  Plaintiff admits that Sgt. Jansen returned to the

27   boxes with Plaintiff's legal materials and continued to pack the boxes.

28       The Court does not find that the circumstances alleged would rise to extraordinary

circumstances nor does it demonstrate intentional, willful, or bad faith conduct on the part of Defendant Gerstel.

> 2.    Efficacy of Lesser Sanctions

To the extent that any sanction would be appropriate in these circumstances, the Court is able to address the loss of Plaintiff's evidence by issuing a jury instruction which would recognize the existence of and loss of Plaintiff's evidence.

> 3.    Nexus Between Correctional Officers' Misconduct and Matters in Controversy

The evidence at issue in this action is related to the merits of Plaintiff's case as he is alleging that the filling that was lost was self-extracted after Defendant Gerstel failed to completely extract his tooth.

> 4.    Prejudice to the Plaintiff

Plaintiff argues that he would be able to prove that the failure to extract the tooth was willful, intentional, and deliberate if he had the filling.  The issue before the jury is whether Defendant Gerstel was deliberately indifferent to Plaintiff's serious medical needs.  The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) ; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).  Contrary to his assertions, Plaintiff will not be able to prove that Defendant Gerstel was deliberately indifferent by simply showing that he possessed a filling from a tooth.

Additionally, Plaintiff states that he would use the filling to show that Defendant Gerstel made false statements regarding the tooth extraction and subsequent x-rays that were taken.  To the extent that Plaintiff claims that Defendant Gerstel made contradictory statements, those statements themselves are evidence that the jury could consider.  See Fed. R. Evid. 608, 801.  The filling is not necessary for, nor dispositive of, the issue of whether Defendant Gerstel made contradictory statements that x-rays were taken following the tooth extraction.

Plaintiff will be able to testify to the appearance of the filling and how he acquired it.  To the

1   extent that the filling is evidence that Defendant Gerstel failed to completely extract Plaintiff's tooth,

2   the Court can craft a jury instruction addressing the loss of the filling that will lessen any prejudice

3   that Plaintiff will suffer due to the loss of the evidence.

4        5.   <u>Conclusion</u>

5        The loss of the evidence in this instance is not attributable to the conduct of Defendant

6   Gerstel.  While the evidence is related to the merits of Plaintiff's case, the Court can craft a jury

7   instruction that will address the loss of the evidence and address any prejudice that would be suffered

8   by Plaintiff.  Accordingly, Plaintiff is not entitled to default judgment based upon the loss of the

9   filling by prison officials.

10   **IV.**

11   **SPOLIATION OF EVIDENCE**

12        "A federal trial court has the inherent discretionary power to make appropriate evidentiary

13   rulings in response to the destruction or spoliation of relevant evidence." <u>Med. Lab. Mgmt.</u>

14   <u>Consultants.</u>, 306 F.3d at 824 (*quoting* <u>Glover v. BIC Corp.</u>, 6 F.3d 1318, 1329 (9th Cir. 1993)).

15   This includes the power to sanction the party responsible for the spoliation of the evidence "by

16   instructing the jury that it may infer that the spoiled or destroyed evidence would have been

17   unfavorable to the responsible party." <u>Med. Lab. Mgmt. Consultants</u>, 306 F.3d at 824.

18        The court is not required to find bad faith in order to give the adverse jury instruction, notice

19   that the evidence is relevant to the litigation will suffice.  <u>Glover</u>, 6 F.3d 1318 at 1330.  However,

20   a party's motive or degree of fault in the destruction of the evidence is relevant as to what sanction,

21   if any, should be imposed. <u>In re Napster, Inc. Copyright Litigation</u>, 462 F.Supp.2d 1060, 1066-67

22   (N.D. Cal. Oct. 25, 2006).  An adverse evidentiary instruction may be rejected when relevant

23   evidence is lost for an innocent reason or by accident. <u>Med. Lab. Mgmt. Consultants</u>, 306 F.3d at

24   824.  Where an evidentiary sanction is imposed it should be "carefully fashioned" so it does not

25   unduly interfere with the party's ability to produce relevant evidence.  <u>Lewis v. Telephone</u>

26   <u>Employees Credit Union</u>, 87 F.3d 1537, 1558 (9th Cir. 1996).

27        In this instance, the Court has found that the loss of the evidence was not due to the actions

28   of Defendant Gerstel.  Therefore, an adverse jury instruction is not warranted.  However, it does

appear that Plaintiff's filling may have been lost during the transfer between institutions which was beyond Plaintiff's control.  In this instance, the Court finds it appropriate to instruct the jury that Plaintiff did have a filling that was lost.

Accordingly, the jury shall receive an instruction that "During the pendency of this action, Plaintiff had a [filling] in his possession that was lost through no fault of his own."  Since Plaintiff alleges that defense counsel has seen the filling, the parties are ordered to meet and confer to determine if they can stipulate to a description of the filling to be given to the jury.  Should the parties reach a stipulation on the description of the filling the description shall replace [filling] in the jury instruction above.  If the parties are unable to reach a stipulation, the instruction shall remain as set forth herein.[1]

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for a fact finding hearing, filed July 25, 2012, is DENIED;

2.     Within thirty days of the service of this order, the parties are to file a notice informing the court of the stipulated description of the [filling]; and

3.     During the trial of this action, the jury shall be instructed that "During the pendency of this action, Plaintiff had a [filling] in his possession that was lost through no fault of his own."

IT IS SO ORDERED.

**Dated:    February 12, 2013**

UNITED STATES MAGISTRATE JUDGE

---

[1]This instruction assumes that the trial court finds that the existence of the filling is relevant within the meaning of the Federal Rules of Evidence.  *See* Fed. R. Evid. 401.